**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

| | |
|---|---|
| LINDA STEPHEN | PLAINTIFF |
| V. | CIVIL ACTION NO.: 1:07CV118-SA-JAD |
| WINSTON COUNTY, MISSISSIPPI and ED HARGETT, in his official and individual capacity | DEFENDANTS |

## MEMORANDUM OPINION

This cause comes on for consideration on Defendant Ed Hargett's Motion to Dismiss[31], and Defendants' Motion for Summary Judgment [48]. The Court finds as follows:

### Facts and Procedural History

Plaintiff was hired by the Winston-Choctaw County Regional Correctional Facility ("Correctional Facility") as a part-time nurse in February 2006. The Correctional Facility had a full-time nurse and needed a part-time nurse to cover the weekends. According to Plaintiff, when she was hired, she gave Beverly Holdiness, the medical director at the Correctional Facility, copies of her nurse's license, CPR card, and driver's license.

As part of her job responsibilities, Plaintiff tended to prisoners' medical concerns and passed out the prisoners' medications. A medication list was compiled by Beverly Holdiness and kept in the nurse's office. Plaintiff testified that after she had been working at the facility for a while, she became aware that correctional officers had access to the special lockbox that contained narcotic medications. Plaintiff testified that she knew correctional officers were giving out medications when no medical personnel were present because the correctional officers had to sign a medicine distribution log.

Plaintiff verbally expressed her concerns to Charles Tillery, the Correctional Facility's chief operation's manager. Plaintiff testified that Tillery was unfamiliar with how the nursing duties were to be carried out. Tillery requested that Plaintiff compile in writing any concerns she had and give it to him. On July 3, 2006, Plaintiff wrote a letter to Tillery that stated in part: "Another concern of mine is the expensing [sic] of narcotics. From my knowledge of the State Board of Nursing, an unlicensed person should not expense [sic] narcotics." Plaintiff testified that she also left a note for Beverly Holdiness about her concerns, and Holdiness told her to continue giving out medications as she had been doing.

In July or August 2006, the Correctional Facility began preparing for an upcoming American Correctional Association audit. During these preparations, Holdiness claims she became aware that the facility did not possess a valid, current copy of the Plaintiff's nurse's license. As such, Holdiness left notes for the Plaintiff requesting she provide the facility with a valid, current copy of her nurse's license. Plaintiff contends Holdiness' request for an updated license was made a mere one or two weeks after she expressed her concerns about correctional officers dispensing medication. Plaintiff testified that she left Holdiness a copy of a card that contained Plaintiff's license number and original licensure date which was February 10, 2000. However, the card did not indicate whether Plaintiff was currently licensed. The card only evidenced Plaintiff was licensed on February 10, 2000. Holdiness continued to leave notes requesting a valid, current copy of Plaintiff's nurse's license.

On or about September 26, 2006, shortly after Holdiness' last request for Plaintiff's nursing license, Plaintiff went to the Correctional Facility administration office to make copies and was approached by Defendant Hargett, the warden of the Correctional Facility. This was the first time

Plaintiff ever met Defendant Hargett. According to Plaintiff, Defendant Hargett struck up a conversation and requested Plaintiff's nurse's license. Plaintiff explained to Hargett that she had given Holdiness a copy of her license. Plaintiff testified that Hargett told her the card she had given to Holdiness was not a real license, and further stated he needed a nurse's license that evidenced she was currently licensed. Plaintiff testified that she informed Hargett he could call the State Board of Nursing to verify her licensure, but he refused. Plaintiff stated that Hargett wanted something stamped by the Mississippi Board with the current year written on it to be in compliance for the American Correctional Association audit. Defendant Hargett provided a copy of Holdiness' license to Plaintiff as an example of the format he needed. Hargett told Plaintiff that she had until Friday to bring him her current nurse's license.

Plaintiff testified that two days later she received a letter in the mail stating that she had been terminated. Defendant Hargett testified that when asked for her current license, Plaintiff became disrespectful and insubordinate. Defendant Hargett contends he terminated Plaintiff's employment for her refusal to provide the facility with a valid, current copy of her nurse's license and also for her insubordination.

Plaintiff Linda Stephen brings this cause of action alleging her termination: 1) violated the substantive and procedural due process clauses of the United States Constitution because Defendants' actions were arbitrary, and the Plaintiff received no due process hearing prior to her termination; 2) violated the First Amendment to the United States Constitution because her discharge was in response to her speech involving a public interest; (3) violated the equal protection clause of the Fourteenth Amendment because she was irrationally treated differently from other employees; (4) violated the public policy of the State of Mississippi because she was fired for

protesting illegal conduct; and (5) constituted malicious interference with her employment.

Defendant Hargett filed a motion to dismiss all state law claims against him in his individual capacity. Defendants also have moved for summary judgment on all issues. The Court first will address Defendants' Motion for Summary Judgment.

## I. Summary Judgment Standard of Review

When the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," summary judgment is appropriate. FED R. CIV. P. 56(C). Facts are considered "material" if they "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether there are any genuine issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual issues are material. Lavespere v. Niagra Mach. & Tool Works, 910 F. 2d 167, 178 (5th Cir. 1990). Next, the Court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party. Id.; Newell v. Oxford Mgmt. Inc., 912 F. 2d 793, 795 (5th Cir. 1990); Medlin v. Palmer, 874 F. 2d 1085, 1089 (5th Cir. 1989).

In making its determination on the motion, the Court must look at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. See FED. R. CIV. P. 56(C); Williams v. Adams, 836 F. 2d 958, 961 (5th Cir. 1988). Rule 56, however, "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. Skotak v. Tenneco Resins, Inc., 953 F. 2d 909, 915-16 & n. 7 (5th Cir. 1992). Thus, parties should "identify specific evidence in the record, and . . . articulate" precisely how that evidence supports their claims. Forsyth v. Barr, 19 F. 3d 1527,

1536 (5th Cir. 1994). Further, the Court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.

To prevail on a summary judgment motion, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that he entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A defendant moving for summary judgment may submit evidence that negates a material element of the plaintiff's claim or show that there is no evidence to support an essential element of the plaintiff's claim. Id. at 322-24, 106 S. Ct. 2548.

To negate a material element of the plaintiff's clam, the defendant must negate an element that would affect the outcome of the action. See Anderson, 477 U.S. at 247, 106 S. Ct. 2505. If the defendant moves for summary judgment alleging no evidence to support an essential element of the plaintiff's claim, the defendant need not produce evidence showing the absence of a genuine issue of fact on that essential element. Rather, the defendant need only show that the plaintiff, who bears the burden of proof, has adduced no evidence to support an essential element of his case. See Celotex, 477 U.S. at 325, 106 S. Ct. 2548.

When the moving party has carried its summary judgment burden, the respondent must go beyond the pleadings and by his own evidence set forth specific facts showing there is a genuine issue for trial. Arbaugh v. Y & H Corp., 380 F. 3d 219, 222 (5th Cir. 2004) (citing Celotex, 477 U.S. at 324, 106 S. Ct. 2548). This burden is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. See Little v. Liquid Air Corp., 37 F. 3d 1069, 1075 (5th Cir. 1994). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. See

5

Anderson, 477 U.S. at 249-50, 106 S. Ct. 2505.

**Discussion**

A.   **42 U.S.C. § 1983**

In order to state a claim under Section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Id. at 49, 108 S. Ct. 2250. "It is firmly established that a defendant in a section 1983 suit acts under color of state law when he abuses the position given to him by the State." Id., 108 S. Ct. 2250 (citing Screws v. United States, 325 U.S. 91, 111, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945)).

In this case, there is no dispute that Defendants' actions, relating to Plaintiff's Section 1983 claims, were performed under color of state law. Consequently, the Court will analyze Plaintiff's claims according to the first element in establishing a claim under Section 1983, i.e., whether Plaintiff states a claim of a "violation of a right secured by the Constitution and laws of the United States." West, 487 U.S. at 42, 108 S. Ct. 2250. Plaintiff seeks relief pursuant to 42 U.S.C. Section 1983 for alleged violations of the Equal Protection Clause, Substantive and Procedural Due Process Clauses of the Fourteenth Amendment, and the First Amendment.

**(1)  Fourteenth Amendment/Equal Protection**

According to Plaintiff, Defendants violated her rights under the Equal Protection Clause of

the Fourteenth Amendment because she was irrationally treated differently from other employees. Although, "the Equal Protection Clause essentially directs that all persons similarly situated be treated alike," Wheeler v. Miller, 168 F. 3d 241, 251 (5th Cir. 1999), "'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.'" Allred's Produce v. United States Dept. of Agriculture, 178 F. 3d 743, 748 (5th Cir. 1999) (quoting Oyler v. Boles, 368 U.S. 448, 456, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962)). To establish an equal protection claim, a plaintiff must made a two-pronged showing: he must first prove that similarly situated individuals were treated differently, and further that this disparate treatment "was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Allred's Produce, 178 F. 3d at 748.

While equal protection claims ordinarily have been premised on allegations of class-based discrimination, the Supreme Court has clarified that the protection afforded by the equal protection clause is not so limited. In Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000), the Court recognized that successful protection claims may, and have, been "brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and there is no rational basis in treatment." Id. at 563, 120 S. Ct. 1073. The Court reiterated that "'[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" Id. at 563-64, 120 S. Ct. 1073 (quoting Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 445, 43 S. Ct. 190, 67 L. Ed. 340 (1923)).

As a prerequisite to her equal protection claim, Plaintiff must prove that similarly situated

individuals were treated differently. Bryan v. City of Madison, Miss., 213 F. 3d 267, 276 (2000); see, e.g, Presnick v. Town of Orange, 152 F. Supp. 2d 215, 224-25 (D. Conn. 2001) ("Class of one plaintiffs are not relieved from the burden of showing that the other similarly situated people were treated differently."). Here, Plaintiff has failed to make such a showing. Plaintiff has not identified any individuals who are prima facie similar to her. Furthermore, she has not provided this Court with any competent evidence of fellow nurses who were similarly situated to her and yet treated differently. Because the Plaintiff cannot make a showing sufficient to establish the existence of an essential element of her case, the Defendants are entitled to summary judgment.

**(2) Fourteenth Amendment/Substantive and Procedural Due Process**

Plaintiff alleges that her discharge was in violation of the substantive and procedural due process clause because Defendants' actions were arbitrary, and Plaintiff received no due process hearing. However, in response to Defendants' Motion for Summary Judgment, Plaintiff conceded her procedural due process claim.

As to Plaintiff's substantive due process claim, in order to allege a violation of her due process rights, the Plaintiff must first establish that she has suffered a deprivation of a constitutionally protected liberty or property interest. Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Plaintiff alleges that she had a constitutionally protected property interest in continued employment with the Winston-Choctaw County Correctional Facility. However, the United States Constitution, standing alone, confers no property right in continued employment. Id. at 577, 92 S. Ct. 2701. Rather, federal courts look to state law to determine whether a property interest exists in a person's employment. Lollar v. Baker, 196 F. 3d 603, 606 (5th Cir. 1999). Under Mississippi law, absent a contract to the contrary, a person's

employment is terminable at will. MISS. CODE ANN. § 21-3-5; Harrison Co. Sch. Bd. v. Morreale, 538 So. 2d 1196, 1200 (Miss. 1989). This means that either the employer or the employee may have a good reason, a wrong reason, or no reason at all for terminating the employment relationship. J.C. Kelly v. Mississippi Valley Gas Co., 397 So. 2d 874, 875 (Miss. 1981). In this case, the Plaintiff admits she was an at-will employee. Inasmuch as the Plaintiff cannot demonstrate the existence of an entitlement to continued employment, her substantive due process claim fails as a matter of law.

**(3) First Amendment**

Stephens alleges that Defendants violated her rights under the First Amendment, because Hargett, acting in his official capacity, terminated her in retaliation for her exercise of her right to free speech. Stephens argues she was terminated because she expressed concerns about prison officials distributing prescription medication to prisoners. Defendants argue that Plaintiff's retaliation claim fails because Stephens was speaking as an employee, not as a citizen, when she engaged in the allegedly protected speech.

It is well established that "public employees do not surrender all their free speech rights by reason of their employment." Jordan v. Ector County, 516 F.3d 290, 294-95 (5th Cir. 2008) (quoting Garcetti v. Ceballos, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)); Williams v. Indep. Sch. Dist., 480 F. 3d 689, 691 (5th Cir. 2007). However, the United States Supreme Court held that for an employee's speech "to qualify for First Amendment protection, he must be speaking 'as a citizen on a matter of public concern.'" Garcetti, 547 U.S. at 418, 126 S. Ct. 1951. "[B]efore asking whether the subject-matter of a particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking 'as a citizen' or as part of [her] public job." Davis v. McKinney, 518 F. 3d 304, 312 (5th Cir. 2008) (quoting Mills v. City of Evansville, 452 F.3d 646, 647-48 (7th

9

Cir. 2006). In Garcetti, the Court ruled that "[a]n employee is not speaking as a citizen – but rather in his role as an employee – when he 'make[s] statements pursuant to [his] official duties.'" Nixon v. City of Houston, 511 F. 3d 494, 497 (5th Cir. 2007) (quoting Garcetti, 547 U.S. at 421, 126 S. Ct. 1951).

The Fifth Circuit established that "[a]ctivities undertaken in the course of performing one's job are activities pursuant to official duties and not entitled to First Amendment protection." Davis, 518 F.3d at 313. See e.g., Williams, 480 F.3d at 694 (holding that an athletic director's memo requesting information about the use of athletic funds was not protected speech because the information was needed to perform daily operations as an athletic director); Nixon, 511 F.3d at 498-99 (holding that a police officer's statement to the media was made pursuant to his official duties because speaking to the media was arguably one of an officer's job responsibilities"). Moreover, even if the speech at issue is not required by the employee's job, the speech may not be protected if it was made while performing the job or to fulfill the job's responsibilities. See Williams, 480 F. 3d at 694. A formal job description is not dispositive in determining whether the employee spoke pursuant to his official duties. Id. at 692. However, the Fifth Circuit has recognized that "when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job." Davis, 518 F. 3d at 313.

Here, there is little question that Plaintiff spoke as an employee in expressing her concerns regarding the distribution of medication. Further, Plaintiff admitted that she took it to be within her job duties to report this conduct to someone in a position of authority. It is also significant that Plaintiff directed these job-related concerns up the chain of command at her workplace to Tillery, chief operations manager, and to Holdiness, medical director. Id. at 313 n.3 ("the caselaw is

10

unanimous in holding that employee's communications that relate to his own job function up the chain of command, at least within his own department or division, fall within his official duties and are not entitled to First Amendment protection"). Because Plaintiff spoke as an employee and not as a citizen, her speech regarding distribution of medication is not protected by the First Amendment. See Nixon, 511 F. 3d at 498.

**B. State Law Claims**

Plaintiff also filed state law claims asserting that her termination was in violation Mississippi public policy because she was terminated for protesting illegal conduct. Further, Plaintiff contends Defendant Hargett committed the tort of malicious interference with her employment when he terminated her on or about September 26, 2006.

**(1) Mississippi Public Policy Violation**

Mississippi is an employment at-will state and follows the common law rule that "a contract of employment for an indefinite term may be terminated at the will of either party." Kelly, 397 So. 2d at 875. This means that either the employer or the employee may have a good reason, a wrong reason, or no reason at all for terminating the employment relationship. Id. However, Mississippi recognizes a narrow public policy exception to the employment at will doctrine whereby an employer may not discharge an employee for reporting illegal acts of his employer to the employer or anyone else. McArn v. Allied Bruce-Terminix Co., 626 So. 2d 603, 606 (Miss. 1993).

Plaintiff testified that, as a health care professional, she was concerned about non-licensed medical personnel providing medical care to prisoners, so she brought her concerns to Tillery's attention. To avoid summary judgment on her McArn claim, Plaintiff must produce record evidence that establishes that the conduct she reported constituted criminal activity. Plaintiff relies on a series

11

of federal statutes in support of her argument that correctional officers dispensing medications to prisoners is criminally illegal.

First, Plaintiff cites 21 U.S.C. § 841(a), which makes it illegal to distribute or dispense a controlled substance, *except as allowed by law*. Plaintiff cites 21 U.S.C. § 802(10) for the proposition that the term "dispense" includes the "administering of a controlled substance." The term "administer" refers to the direct application of a controlled substance to the body of a patient by a practitioner (or, in his presence, by his authorized agent), or the patient or research subject at the direction and in the presence of the practitioner . . . . 21 U.S.C. § 802(2). "Practitioner" is defined by statute as a "physician, dentist, veterinarian, scientific investigator, pharmacy, hospital, or other person licensed, registered, *or otherwise permitted* . . . ." 21 U.S.C. § 802(21) (emphasis added).

Plaintiff does not allege, nor is there any proof in the record to establish, that the medications the correctional officers gave to prisoners were not lawfully prescribed by the prisoners' own physicians or by Dr. Medlin, the physician of the Correctional Facility. Moreover, Plaintiff fails to convince this Court that correctional officers giving prisoners their lawfully prescribed prescriptions pursuant to a physician's order is criminally illegal.

In the alternative, Plaintiff contends she does not have to prove the conduct complained of is criminally illegal because the McArn exception only requires that she reasonably believed the activity to be criminally illegal. The Fifth Circuit rejected this exact argument in Wheeler v. BL Development Corp., 415 F.3d 399 (5th Cir. 2005). Here, as in Wheeler, Plaintiff relies on the Mississippi Supreme Court decision in Willard v. Paracelsus Health Care Corp., 681 So. 2d 539 (Miss. 1996) ("Willard I"), in support of her position. Plaintiff specifically relies on the court's

statement in Willard I that "[d]ischarge in retaliation for an employee's *good faith effort* to protect the employer from wrongdoing constitutes an independent tort and may support punitive damages." Id. at 543 (emphasis added). Plaintiff argues this statement could be interpreted as not requiring her to prove that the alleged illegal act reported is actually illegal, only that she had a good faith belief of the same.

The Fifth Circuit explained that the issue in Willard I was not whether the reported activity was reasonably believed to be illegal. Wheeler, 415 F.3d at 403. Rather, the activity at issue in Willard I was a clear case of forgery, so the court did not engage in any discussion of whether the conduct reported was criminally illegal. Id. Accordingly, this Court finds, as did the Fifth Circuit in Wheeler, Plaintiff's attempt to equate an employee's "good faith effort" in reporting illegal activity, which is protected under the common law exception, with the good faith belief that illegal activity was occurring is misplaced. Id.

Plaintiff further relies on another Mississippi Supreme Court decison, Paracelsus Health Care Corp. v. Willard, 754 So. 2d 437 (Miss. 1999) ("Willard II"), in which the court addressed the scope of its previous decision in McArn. Plaintiff cites the court's statement that "neither McArn or Willard I . . . suggest that the plaintiff must first prove that a crime was committed" for the proposition that Plaintiff merely needs to have a good faith belief that the reported conduct is illegal to benefit from the public policy exception. Id. at 443. Again, the Fifth Circuit rejected this exact argument in Wheeler, 415 F.3d at 399. The Fifth Circuit explored the boundaries of McArn's public policy exception in Drake v. Advance Construction Service, Inc., 117 F.3d 203 (5th Cir. 1997). Importantly, the Drake Court did not conclude that the employee was protected under McArn simply because he reasonably believed what he was asked to do by his superiors was criminal. Wheeler,

13

415 F. 3d at 404 (citing Drake, 117 F.3d at 204). Instead, remand was ordered to determine the legality of such action, lending credence to the position that the act itself must be criminal to implicate the exception and rendering the subjective intent or belief of the plaintiff irrelevant. Id. Therefore, McArn's "narrow public policy exception" is only applicable when the act reported is criminally illegal. Id.

As noted above, Plaintiff has failed to prove that the act complained of was criminally illegal, and the Fifth Circuit expressly has rejected the "good faith belief" theory. Thus, Plaintiff's wrongful discharge in violation of Mississippi public policy claim fails as a matter of law.

**(2) Malicious Interference with Employment**

Plaintiff claims that Defendant Hargett, by intentionally terminating her employment for reporting allegedly illegal conduct, maliciously interfered with her employment relations with the Correctional Facility. The Complaint characterizes this claim as "malicious interference with employment relations." A claim for malicious interference with employment is the same as asserting a tortious interference with contractual relations claim. See Roberson v. Winston County, Miss., No. 1:00CV415, 2002 WL 449667 (N.D. Miss. 2002). Mississippi law allows for recovery against those who intentionally and improperly interfere with the performance of a contract between another and a third party, causing the third party not to perform the contract and thereby causing injury. Morrison v. Mississippi Enter. For Tech., 798 So.2d 567, 574 (Miss. Ct. App. 2001). Tortious interference with at-will employment can be the basis of a claim. Levens v. Campbell, 733 So. 2d 753 (Miss. 1999).

In order to prove tortious interference with a contract, the Plaintiff must show: 1) the acts were intentional and willful; 2) that they were calculated to cause damages to the Plaintiff in her

14

lawful business; 3) that they were done with the unlawful purpose of causing damages and loss, without right or justifiable cause on the part of the defendant; and 4) that actual loss occurred. Morrison, 798 So. 2d at 575. Further, the Mississippi Supreme Court has held that a "cause of action for tortious interference with a contract generally will lie against one who maliciously interferes with a valid and enforceable contract." Levens, 733 So. 2d at 759-60. However, a person occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with the principal's contractual relationship with a third person. Morrison v. Mississippi Enter. For Tech., 798 So.2d 567, 574 (Miss. Ct. App. 2001). (quoting Shaw v. Burchfield, 481 So. 2d 247, 255 (Miss. 1985).

Thus, as a person occupying a position of responsibility as to Plaintiff's employment, Defendant Ed Hargett's actions were privileged unless they were taken in bad faith. First, bad faith raises an issue of motive. Morrison, 798 So. 2d at 575. It is not necessary for direct evidence to exist, such as an admission by the Defendant that he acted in bad faith. Id. Instead, such a conclusion generally arises as an inference from other evidence. Id. The conclusion, though, must be that the actor was malicious or recklessly disregarding the rights of the person injured. Id.

Defendant Hargett contends he terminated Plaintiff's employment for her refusal to provide the facility with a valid, current copy of her nurse's license and also for her insubordination towards him. Contrastly, Plaintiff argues that she did produce a valid, current copy of her nurse's license as requested. Plaintiff also contends that she never demonstrated insubordinate conduct towards Defendant Hargett, and that his explanation of the events surrounding her termination are inaccurate. Furthermore, Plaintiff argues that the close timing (one or two weeks) between when she expressed her concerns about correctional officers dispensing medication and Holdiness' request

for her nurse's license raises an inference that Defendant Hargett may have acted in bad faith.

This Court is of the opinion that the record does not support a conclusion as a matter of law that Defendant Hargett's actions were not taken in bad faith. Stated differently, the Court concludes that Plaintiff has presented sufficient evidence, including circumstantial evidence, to create a genuine issue of material fact to whether Defendant Hargett acted in bad faith in causing Plaintiff's termination.

## II. Rule 12(b)(6) Motion to Dismiss Standard

Defendant Hargett's instant Motion seeks dismissal of the state law claims against him in his individual capacity pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff filed state law claims alleging Defendants' violated Mississippi public policy because she was terminated for protesting illegal conduct. Further, Plaintiff contends Defendant Hargett committed the tort of malicious interference with her employment when he terminated her on or about September 26, 2006.

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. Baker v. Putnal, 75 F. 3d 190, 196 (5th Cir. 1996) (citing McCartney v. First City Bank, 970 F. 2d 45, 47 (5th Cir. 1992)). "[T]he court may not look beyond the pleadings in ruling on the motion." Baker, 75 F. 3d at 197. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff must provide the "grounds" of his "entitlement to relief," which requires more than labels and conclusion or formulaic recitations of the elements of a causee of action. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level."

16

Id. at 1965.

"Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with allegations in the complaint." Id. at 1969. "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F. 3d 191, 205 (5th Cir. 2007).

## Discussion

Defendant Hargett's instant Motion seeks dismissal of the state law claims against him in his individual capacity pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because summary judgment has been granted in Defendants' favor as to Plaintiff's wrongful termination in violation of public policy claim, this Court will address the only remaining state law claim against Defendant Hargett in his individual capacity, which is the tort of malicious interference with employment.

Hargett claims that he is protected from liability pursuant to the Mississippi Tort Claims Act ("MTCA") because he was within the course and scope of his duties as a state employee when he terminated Plaintiff. In response, Plaintiff contends that because she has alleged Defendant's actions constituted malice, her claims are not covered by the MTCA. The MTCA provides as follows:

> For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.

MISS. CODE ANN. § 11-46-5(2). The Mississippi Supreme Court held that when a state employee acts

17

with malice, he acts outside the scope of his employment, and is therefore subject to personal liability. Kirk v. Crump, 886 So. 2d 741, 746 (2004). See, e.g., Gibson v. Estes, No. 2:05CV170, 2007 WL 1459307 (N.D. Miss. May 16, 2007) (noting that plaintiff's malicious interference claim was not subject to the MTCA).

The Court agrees and concludes that Defendant Hargett is not entitled to dismissal of Plaintiff's state law claim of malicious interference against him in his individual capacity.

## Conclusion

Based on the forgoing analysis, it is hereby ORDERED that Defendant's Motion for Summary Judgment [48] is GRANTED IN PART and DENIED IN PART. Specifically, it is GRANTED as to all federal causes of action raised by the Complaint and the state law claim for wrongful discharge in violation of Mississippi public policy, and it is DENIED as to Plaintiff's state law claim for malicious interference with employment. Furthermore, Defendant Hargett's Motion to Dismiss [31] state law claims against him in his individual capacity is GRANTED IN PART and DENIED IN PART. Specifically, it is GRANTED as to Plaintiff's claim for wrongful discharge in violation of Mississippi public policy as this claim was dismissed on summary judgment, and it is DENIED as to Plaintiff's claim for malicious interference with employment.

A separate order in accordance with this opinion shall issue this day.

**SO ORDERED** this the 4th day of November 2008.

 **/s/ Sharion Aycock**
 **U.S. DISTRICT JUDGE**